**UNITED STATES of America**

v.

**Angelita MARTINEZ–ZAYAS.**

**Crim. No. 86–500.**

United States District Court,
E.D. Pennsylvania.

March 10, 1987.

Barbara J. Cohan, Asst. U.S. Atty., Philadelphia, Pa., for U.S.

Joseph A. Canuso, Philadelphia, Pa., for Martinez-Zayas.

### MEMORANDUM

NEWCOMER, District Judge.

I have before me a motion by the defendant to suppress evidence found in defendant's home during a search of the premises. The search was conducted after the law enforcement officers obtained a search warrant. Defendant claims that the search was made without probable cause, and violated her rights under the Fourth Amendment. For the reasons explained below, defendant's suppression motion will be denied.

### I. *Facts*

■ Defendant was arrested on November 3, 1986, and charged with possession of 13 kilograms of cocaine, a schedule II narcotic, with the intent to distribute. At the time of her arrest, defendant was in her residence at 517 West Butler Street, Philadelphia, Pennsylvania. On that date, agents of the federal government and the Philadelphia Police Department entered defendant's home under the authority of a search warrant which had been duly obtained from a bail commissioner in Philadelphia.[1]

---

1. Under Pennsylvania Law, bail commisioners of the Philadelphia Municipal Courts have the authority to "issue arrest warrants and search and seizure warrants." 42 Pa.C.S.A. § 1123(a)(5) (Purdon Supp.1986). The Philadelphia Municipal Court is a court of record, *see* 42 Pa.C.S.A. §§ 321, 1121 *et seq.*, and thus is authorized to issue warrants for a search in which a federal law enforcement officer participates. Fed.R.Crim.P. 41(a). Defendant seems to imply that because the warrant was issued by a bail commissioner and not a federal magistrate or state judge, the finding of probable cause must be subjected to some hightened scrutiny. De-

After entering defendant's home, the agents conducted a search. During the search, the officers discovered 13 kilograms of cocaine hidden under the floor in the bedroom of defendant's children, and four one gram bags of cocaine in a purse which also contained defendant's identification. In addition, large quantities of cutting agent, clear plastic bags and colored tape, all of which are routinely used to package cocaine for retail distribution, were found in the house.

Defendant seeks to suppress the evidence found during the search because, she alleges, the search warrant issued without probable cause. The warrant was issued upon the affidavit of Officer McCue. The information contained in the affidavit appears to have been supplied by a cooperating confidential informant. The cooperating informant was previously involved in trafficking cocaine in Philadelphia. The affidavit indicates that the informant has supplied information to the Drug Enforcement Administration ("DEA") since March 1986. Much of the information supplied by the informant in the past has been corroborated, and two prior arrests and seizures of cocaine and cash have resulted from his tips.

According to information given by the informant to the DEA on November 3, 1986:

A Hispanic male known as Eddie LNU would transport approx. 20 kilograms of cocaine from New York to Philadelphia on 11/2/86. This C/I received this allegation from an individual that is unknown to the DEA agents. Further that Eddie LNU is acting as a courier and warehouse man for Angel and Jose Hernandez, two well documented cocaine traffickers previously arrested by DEA and Philadelphia P.D. The unknown source of the allegation further advised that Eddie LNU would warehouse the cocaine at 517 W. Butler St. On 11/2/86,

based on that information the C/I established surveillance of 517 W. Butler Street. The C/I observed the Hispanic male remove a large bag from an orange Buick parked in the 500 block of W. Butler Street. The license # of that car was MYD318. The unknown source had previously advised the C/I of that tag # as being involved. The C/I observed the hispanic male carry the large bag into 517 W. Butler Street. According to the unidentified source the cache of cocaine remain (sic) at 517 W. Butler Street on the 2nd floor in the rear room hidden in the ceiling. Access to the cache in the ceiling is effected by moving a lighting fixture on the ceiling.

Defendant argues that the affidavit is insufficient to support a finding of probable cause, on several grounds. First, defendant contends that the statement of the informant's reliability is insufficient to allow an independent assessment by the bail commissioner. Second, the information supplied by the informant, although corroborated in part by the informant himself, was not corroborated by any law enforcement agents. And third, the informant himself obtained his information from an anonymous source, without any indication of reliability. "The warrant is devoid of any explanation of how the information was obtained in the first place." Defendant's Memorandum of Law at 2.

## II. *Legal Analysis*

In recent years, the circumstances in which evidence obtained pursuant to a search warrant should be suppressed have been significantly narrowed. In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court excised many of the hypertechnical restraints on finding probable cause for the issuance of a warrant. And in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Court held that the

fendant's Memorandum of Law at 3. I do not believe that is the case. Bail commissioners who are not members of the Bar must complete a training course and pass an examination before assuming their duties. 42 Pa.C.S.A. § 3111 *et seq.* And as the Supreme Court has pointed

out, the existence of probable cause is a practical, non-technical determination that evidence of a crime will likely be found in a particular location. *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983).

exclusionary rule does not prohibit the government from using evidence obtained by officers acting in reasonable reliance on a search warrant issued by a neutral and detached magistrate, but ultimately found to be unsupported by probable cause.

## A. *Probable Cause*

The Fourth Amendment provides in part that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized." U.S.C.A. Const. Amend. 4. In *Gates,* the Supreme Court held that the Fourth Amendment's requirement of probable cause is to be assessed not according to any rigid formulation,[2] but rather in light of the "totality of the circumstances" known to the magistrate. 462 U.S. at 230–31, 103 S.Ct. at 2328–29. The *Gates* Court described the probable cause standard as a "practical, non-technical conception," *id.* at 231, 103 S.Ct. at 2328; *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), and cautioned against "excessively technical dissection of informants' tips." *Gates, supra* at 234, 103 S.Ct. at 2330 (footnote omitted). The Court explained at 238–39, 103 S.Ct. at 2332:

> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. *Jones v. United States,* 362 U.S. 257, 271 [80 S.Ct. 725, 736, 78 L.Ed.2d 697] (1960).

Furthermore, the Court wrote that reviewing courts should not review the magistrate's determination of probable cause de novo, but rather should accord the decision "great deference." *Id.* at 236, 103 S.Ct. at 2331. "[D]oubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* at 237 n. 10, 103 S.Ct. at 2331 n. 10, quoting *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

■ Examining the "totality of the circumstances" known to the bail commissioner in the instant case, I conclude that, although the case is a close one, the bail commissioner had a substantial basis for concluding that there was probable cause to search defendant's residence. Despite defendant's arguments to the contrary, the affidavit provides a basis for crediting the confidential informant with reliability. The informant had supplied information to the DEA for eight months, resulting in two arrests and the seizure of drugs and cash. The information provided in this particular case was sufficiently detailed to allow the bail commissioner to conclude that it was based on more than mere rumor.

It is true that much of the information supplied by the informant came from a source unknown to the DEA and the Philadelphia Police. But it came to law enforcement officials with a proven record of reliability. Given the informant's record of past reliability, the law does not require the court necessarily to look to the reliability of the informant's sources. That is precisely the type of rigid analytical approach rejected by the *Gates* Court, when it looked to the "totality of the circumstances" to determine the existence of probable cause.

As defendant points out, none of the numerous details supplied by the informant were corroborated by the law enforcement agents, except that Angel and Jose Hernandez, for whom Eddie LNU worked,

---

**2.** The "two prongs" of the so-called *Aguillar-Spinelli* formulation, which prevailed prior to *Gates,* required independent assessment of (1) the "reliability" or "veracity" of the informant, and (2) the informant's "basis of knowledge." *Gates,* 462 U.S. at 230–31 n. 6, 103 S.Ct. at 2328

n. 6. Deficiencies in proof of one "prong" were viewed as not remediable even by very strong evidence on the other. *Id.* at 230 n. 5, 103 S.Ct. at 2328 n. 5. The Court expressly rejected the requirement of independent proof of these two factors. *Id.* at 233, 103 S.Ct. at 2329.

were well documented traffickers in cocaine. But again, the reliable informant himself corroborated details of the story he had heard. These details include a large delivery to the address of defendant's home and the license number of the car making the delivery. Based upon the totality of the circumstances presented and known to the bail commissioner, I am unable to say that he lacked a substantial basis for concluding that probable cause existed.

### B. *Exclusion of Evidence*

■ Once probable cause is determined to be present, the evidence seized pursuant to a warrant is deemed admissible evidence. However, even if probable cause were lacking in this admittedly close case, the evidence seized during the search of defendant's house would still be admissible in the government's case-in-chief. "Whether the exclusionary sanction is appropriately imposed in a particular case ... is 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.'" *United States v. Leon, supra,* 468 U.S. at 907, 104 S.Ct. at 3412, quoting *Gates, supra,* 462 U.S. at 223, 103 S.Ct. at 2324.

■ Exclusion of evidence obtained pursuant to a warrant is only required "in those unusual cases in which exclusion will further the purposes of the exclusionary rules." *Leon, supra,* 468 U.S. at 918, 104 S.Ct. at 3418. The *Leon* decision explained that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates."[3] *Id.* at 916, 104 S.Ct. at 3417. When an officer executes in objective good faith a search warrant obtained from a neutral judicial officer and acts within the warrant's scope, then there is no police misconduct to be deterred by excluding evidence should the warrant later be found defec-

tive. *Id.* at 919–20, 104 S.Ct. at 3418–19. Evidence so obtained is admissible.

There are certain circumstances in which evidence obtained during a search pursuant to warrant would still be suppressed under *Leon.* As the Court wrote:

Suppression ... remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have know was false except for his reckless disregard of the truth.... Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e. in failing to particularize the the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*Id.* at 923, 104 S.Ct. at 3421.

■ Under the *Leon* standards, it is clear that the evidence seized in the case before me is admissible evidence and should not be suppressed, even if one were to assume that the warrant was issued without probable cause. None of the three occasions quoted above where suppression remains appropriate even arguably applies here. For this reason, as well as my conclusion that the magistrate's finding of probable cause was supported by the facts alleged in the affidavit, I will deny defendant's motion.

An appropriate order follows.

---

**3.** The Court further explained 468 U.S. at 917, 104 S.Ct. at 3417 that:

Imposition of the exclusionary sanction is not necessary meaningfully to inform judicial officers of their errors, and we cannot conclude that admitting evidence obtained pursuant to

a warrant while at the same time declaring that the warrant was somehow defective will in any way reduce judicial officers' professional incentives to comply with the Fourth Amendment.